**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS - DALLAS DIVISION**

| | | |
|---|---|---|
| **HOPPENSTEIN PROPERTIES, INC.** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | Civ. Action No.3:21-cv-01172 |
| | § | |
| **CITY OF DALLAS and EDDIE GARCIA, in** | § | |
| **his official capacity as Chief of Police,** | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF'S OPPOSITION AND OBJECTIONS TO DEFENDANTS' MOTION TO**</u>
<u>**DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

COMES NOW Plaintiff, Hoppenstein Properties, Inc. filing this opposition and objections to the *Motion to Dismiss* ("Motion") (ECF No. 24) filed by the City of Dallas ("City") and Eddie Garcia in his official capacity as Chief of Police ("Chief") (collectively "Defendants").

## I.    SUMMARY

The City of Dallas has been reducing its police force for years and has decided to address the resulting increase in criminal activity by holding property owners responsible for crime that occurs on their property and imposing ever-stricter regulations on the use of targeted properties until it becomes impossible for their owners to profit from them in any way.

The Defendant's Motion seeks dismissal of this suit, claiming that Plaintiff has not exhausted administrative processes and that failure inexorably means the case must be dismissed.

Plaintiff herein responds that this case does not require all administrative processes to be complete, and even if it did, these steps were completed when the PLAB hearings were finished. Thus, Plaintiff's claims are ripe and the case should not be dismissed.

<u>TABLE OF CONTENTS</u>

I.    SUMMARY ................................................................................................ 1

II.   ARGUMENT ............................................................................................. 5

   **A.  A plaintiff need not always exhaust administrative remedies.** ...................................... 5

      *i.  Exhaustion of Administrative Remedies is inapplicable without exclusive jurisdiction.* . 5

     *ii.  Exhaustion is not required when an agency is acting outside its statutory powers.* ....... 6

    *iii.  Exhaustion is not required when a plaintiff is suffering irreparable harm.* ................... 8

    *iv.  Exhaustion is not required when a substantial constitutional question is presented.* ... 10

   **B.  Plaintiff has exhausted all administrative remedies.** ................................................... 12

III.  OBJECTIONS ......................................................................................... 18

IV.  PRAYER ................................................................................................. 21

TABLE OF AUTHORITIES

**Cases**

*Beckles v. United States*, 197 L. Ed. 2d 145 (2017).......................................................... 14

*Brennan v. City of Willow Park*,
    376 S.W.3d 910, 922 (Tex. App.—Fort Worth 2012, pet. denied) ........................... 7

*Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943) ..................................................... 13

*Carmona v. City of Dallas*, No. 3:19-CV-469-L, 2020 WL 2812859 ............................. 14

*Cedar Point Nursery*, 141 S. Ct. at 2079 ....................................................................... 17

*Cent. Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997) ................... 10, 11

*City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788, 790 (1951)..................... 11

*City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012) .................................. 12, 14

*City of Grapevine v. CBS Outdoor,* Inc.,
    No. 02-12-00040-CV, 2013 WL 1830375 (Tex. App.—Fort Worth, May 2, 2013, no pet. h.)
    ...................................................................................................................................... 12

*Gage*, 582 S.W.2d at 414 ................................................................................................ 15

*Geiselman* v. *Cramer Financial Group, Inc.*, 965 S.W.2d 532, 537 (Tex. App. 1997) ............... 18

*Harris Cnty. Fresh Water Supply Dist. No. 61 v. FWO Dev., Ltd.*,
    396 S.W.3d 639, 644 (Tex. App.— Houston [14th Dist.] 2013, pet. filed)............................. 5

*Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*,
    730 S.W.2d 644, 646 (Tex. 1987).............................................................................. 8, 9

*Humphreys v. Caldwell*, 888 S.W.2d 469, 470–471 (Tex. 1994) ................................... 18

*Ike & Zack, Inc. v. Matagorda Cnty.*,
    13-12-00314-CV, 2013 WL 1091812, at *5 (Tex. App.—Corpus Christi Mar. 14, 2013, no
    pet.) (mem. op.).......................................................................................................... 7

*In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 625 (Tex. 2007) ........................................... 5

*Kim v. State*, 451 S.W.3d 557, 563 (Tex. App. 2014) .................................................. 18

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)........................................................... 16

*Roma Indep. Sch. Dist. v. Guillen*,
    No. 04-13-00133-CV, 2013 WL 684781 (Tex. App.—San Antonio Feb. 25, 2013, pet.
    denied).......................................................................................................................... 9

*See also Morris v. Houston Indep. Sch. Dist.,* 388 S.W.3d 310 (Tex. 2012) ................ 8

*Severance v. Patterson*, 370 S.W.3d 705, 710 (Tex. 2012).......................................... 17

*Spring Branch Mgmt. Dist. v. Valco Instruments Co.,*
    No. 01-11-00164-CV, 2012 WL 2923151 (Tex. App.—Houston [1st Dist.] July 12, 2012,
    no pet.) ........................................................................................................................ 11

*Strayhorn v. Lexington Ins. Co.*,
    128 S.W.3d. 772, 780 (Tex. App.—Austin 2004), aff'd, 209 S.W.3d 83 (Tex. 2006) ............ 6

*Tex. State Bd. of Pharmacy v. Walgreen Tex. Co.*,
    520 S.W.2d 845, 848 (Tex. Civ. App.—Austin 1975 writ ref'd n.r.e.) ................................. 10

*Texas Health Facilities Com. v. Charter Medical-Dallas, Inc.*,
    665 S.W.2d 446, 451 (Tex. 1984)...................................................................... 14, 15
*United Residential Props., L.P. v. Theis*,
    378 S.W.3d 552, 560 (Tex. App.—Houston [14th Dist.] 2012, no pet.)............................. 5, 6
*Valco Instruments Co.*, 2012 WL 2923151, at *6................................................................ 11, 12
*Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978) ............................ 6
*Younger v. Harris*, 401 U.S. 37 (1971)....................................................................... 13

**Statutes**

Tex. Civ. Prac. & Rem. Code § 125.0015(a) ........................................................ 13, 17
Tex. Civ. Prac. & Rem. Code § 125.002 ................................................................ 17
TEX. CONST. Art. V, §8; *see In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004)............... 5

## II.   ARGUMENT

### A.   A plaintiff need not always exhaust administrative remedies.

   *i.Exhaustion of Administrative Remedies is inapplicable without exclusive jurisdiction.*

1.   The requirement to exhaust administrative remedies derives from Article V, Section 8 of the Texas Constitution, which states in relevant part:

> District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.

TEX. CONST. Art. V, §8; *see In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004).

2.   Because administrative agencies exercise only those powers granted by statute, determining whether an agency has exclusive jurisdiction requires statutory interpretation and often turns on the phrase "exclusive original jurisdiction". In *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 625 (Tex. 2007)., the court concluded that statutory language granting the Public Utility Commission "exclusive original jurisdiction over the business and property of a telecommunications utility" gave the agency exclusive jurisdiction over claims that Southwestern Bell Telephone Company had improperly collected a surcharge from its customers.

3.   However, Texas courts have recognized that "a party is required to exhaust administrative remedies only when the legislature has vested exclusive jurisdiction in an agency to make an initial determination in a dispute." *Harris Cnty. Fresh Water Supply Dist. No. 61 v. FWO Dev., Ltd.*, 396 S.W.3d 639, 644 (Tex. App.— Houston [14th Dist.] 2013, pet. filed).

4.   The 14th Court of Appeals in Houston also considered the relationship between exclusive jurisdiction and exhaustion of administrative remedies in *United Residential Props., L.P. v. Theis*, 378 S.W.3d 552, 560 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The exhaustion issue in that case turned on whether the Texas Manufactured Housing Standards Acts (TMHSA)

confers either exclusive or primary jurisdiction on the Manufactured Housing Board that would require buyers to exhaust administrative remedies before suing a vendor for fraud and DTPA violations.

5.      The court observed that the TMHSA "does not include clear and express statutory language conferring exclusive jurisdiction to [the] agency" for the fraud and non-warranty DTPA claims at issue; on the contrary, the TMHSA only addresses warranty claims. *Id.* at 561. Nor did the vendor make any argument that the agency has primary jurisdiction. Accordingly, the vendor's jurisdictional challenge was overruled. *Id.* at 562

6.      The subject Ordinance, found at Section 27 of the Dallas City Code, is titled "Habitual Criminal Properties" ("Ordinance") and governs the process by which owners are saddled with policing their properties for abatable crime which the Dallas police do not stop.  The Ordinance does not include clear and express statutory language conferring exclusive jurisdiction to PLAB to hear appeals from criminal habitual property designations. Furthermore, given the serious due process irregularities inherent in the PLAB process, this Court should acknowledge that it has jurisdiction to review the habitual criminal property designations by the City.

   *ii.Exhaustion is not required when an agency is acting outside its statutory powers.*

7.      The requirement to exhaust administrative remedies does not apply "when an agency is exercising authority beyond its statutorily conferred powers." *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978). In such situations, exhaustion would not serve judicial and administrative efficiency, and agency policies and expertise are irrelevant. *Strayhorn v. Lexington Ins. Co*., 128 S.W.3d 772, 780 (Tex. App.—Austin 2004), aff'd, 209 S.W.3d 83 (Tex. 2006). Prompt judicial intervention is therefore permissible when the agency has no jurisdiction to begin with. *Westheimer Indep. Sch. Dist.,* 567 S.W.2d at 785.

8.     The 2nd Court of Appeals has clarified applications of the exhaustion of administrative remedies rule in the context of administrative actions beyond statutory powers. *Brennan v. City of Willow Park*, 376 S.W.3d 910, 922 (Tex. App.—Fort Worth 2012, pet. denied).

9.     There, the court found the exception applicable when a tax appraisal district sent a notice requiring homeowners to pay supplemental taxes because their tax bills for certain prior years had erroneously failed to include city taxes. The appraisal district added the cities as taxing units to the appraisal record for those years and required the homeowners to pay the city taxes. The homeowners refused to pay the back taxes and filed suit for declaratory and injunctive relief. They claimed that the appraisal district lacked statutory authority to add the city taxes after the property had been appraised and taxes paid for the prior years. The trial court dismissed the suit for failure to exhaust administrative remedies, but the court of appeals reversed. The Fort Worth court held that, while the Tax Code authorized a district to add property omitted from an appraisal roll, the district had no authority to add omitted taxing units (the cities). The court concluded that the homeowners were not required to pursue an administrative tax protest prior to filing suit because suit fell "within the acting-outside-statutory-powers exception to the exhaustion-of-administrative-remedies doctrine." *Id.*

10.     The Corpus Christi Court of Appeals found the ultra vires exception applicable in another tax appraisal case. In *Ike & Zack v. Matagorda County*, a suit to recover delinquent ad valorem taxes, the summary judgment evidence failed to show that the defendant taxpayers had ever received notice of the delinquent taxes owed for the contested years. *Ike & Zack, Inc. v. Matagorda Cnty.*, 13-12-00314-CV, 2013 WL 1091812, at *5 (Tex. App.—Corpus Christi Mar. 14, 2013, no pet.) (mem. op.). In the court's view, the appraisal district would be acting outside of its statutory powers if it attempted to assess taxes without providing notice. On this basis the

court indicated that the taxpayers were not required to exhaust their administrative remedies as a precondition to maintaining their claim that the taxes were not owed. *See also Morris v. Houston Indep. Sch. Dist.,* 388 S.W.3d 310 (Tex. 2012) (holding that Tax Code exhaustion requirement does not apply to prevent taxpayer from contesting liability on the basis of non-ownership when the taxing unit non-suited and taxpayer was realigned as plaintiff).

11.     Similarly, the PLAB has failed to give Plaintiff even cursory due process protection by inconsistently applying its evidentiary standards, misapplying the burden of proof, and via the Ordinance's failure to provide adequate notice.

   *iii.Exhaustion is not required when a plaintiff is suffering irreparable harm.*

12.     The Texas Supreme Court has taught that Texas courts do not require exhaustion of administrative remedies in cases where a party faces irreparable harm and the agency cannot grant relief. *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987). Irreparable harm qualifies as its own exception to the exhaustion of administrative remedies doctrine. *Id.*

13.      In *Local 2415*, high school teachers filed suit to enjoin their employer school district from extending the length of the school day. After the court of appeals dissolved the injunction and dismissed the suit because the teachers had not exhausted the administrative process. The Supreme Court reversed and held that the teachers were not required to exhaust their administrative remedies before filing suit because the administrative process could not provide relief from irreparable harm. The Supreme Court based that reversal based on the trial court's "undisturbed finding" that the proposed extended school day would immediately and irreparably harm the teachers' childcare arrangements, transportation arrangements, and second jobs. Moreover, the Commissioner of Education possessed no authority to grant immediate injunctive

relief to prevent that harm. The Supreme Court held that, under these circumstances "the courts may properly exercise their jurisdiction in order to provide an adequate remedy." *Id.* at 646.

14.     In a more recent case, *Roma Independent School District v. Guillen*, the San Antonio Court of Appeals followed *Houston Federation of Teachers* and held that the plaintiffs were not required to exhaust administrative remedies under the irreparable harm exception. *Roma Indep. Sch. Dist. v. Guillen,* No. 04-13-00133-CV, 2013 WL 684781 (Tex. App.—San Antonio Feb. 25, 2013, pet. denied).  The dispute arose when school district board members passed a resolution changing the board member election dates and extending the terms of the current members. A voter in the school district filed suit to declare the resolution void and sought injunctive relief.

15.     The trial court rejected the school district's argument that the voter was required to exhaust her administrative remedies before filing suit. The San Antonio court affirmed. The appellate court acknowledged that, as a general rule, an aggrieved party whose claim relates to the administration of school laws must exhaust administrative remedies. But the court found that the irreparable harm exception applied to at least some of the plaintiff's claims.

16.     *Guillen* recognized irreparable harm that would occur if absent injunctive relief board members remained in office beyond their original terms and there would be insufficient time to call an election for the claimed lawful date. Moreover, the Commissioner of Education lacked statutory authority to issue an injunction to prevent the harm. *Id.* at *4-5. The court also found that some claims were not "school law" grievances over which the Commissioner had any jurisdiction and, moreover, fell within a provision of the Education Code that expressly excused exhaustion. *Id*. at *4.

17.     Likewise, in the facts at bar, Plaintiff is suffering imminent and immediate harm in the form of profound damage to his reputation since the City's habitual criminal property notices act

as a scarlet letter tarnishing Plaintiff's reputation and that of his commercial properties. Furthermore, Plaintiff's vagueness, takings, and procedural due process claims fall outside the jurisdiction of the PLAB and the Ordinance which confers authority on PLAB. Consequently, Plaintiff need not exhaust administrative remedies through the PLAB process, since his claims arise outside the jurisdiction of the body.

*iv. Exhaustion is not required when a substantial constitutional question is presented.*

18.     In *Texas State Board of Pharmacy v. Walgreen Texas Company*, the Austin Court of Appeals stated that "exhaustion [of administrative remedies] may be excused wherein substantial constitutional questions are involved." *Tex. State Bd. of Pharmacy v. Walgreen Tex. Co*., 520 S.W.2d 845, 848 (Tex. Civ. App.—Austin 1975 writ ref'd n.r.e.). Upon being charged by an agency with violating regulatory requirements, the plaintiffs filed suit challenging the constitutionality of the underlying regulatory statute. The court held that the suit could be maintained. The court reasoned that it would be "futile" to require exhaustion of administrative remedies because "administrative agencies have no power to determine the constitutionality of statutes." *Id.*

19.     In *Central Power and Light Company v. Sharp,* the Texas Supreme Court cited and quoted the *Walgreen* opinion with approval. *Cent. Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997).    *In Central Power and Light*, the court held that the plaintiff in an administrative appeal could maintain a challenge to the constitutionality of the underlying statute even though that point was not included in the party's motion for rehearing before the agency. *Id* at 618. The court concluded that there was no need to apprise the agency of the constitutional challenge in the motion because the agency lacked authority to decide the issue. Exhaustion was not required both because the agency lacked the authority to decide that issue and because the

administrative process could not "rectify the error claimed." *Id.*

20.    In the facts at bar, the underlying vagueness inherent in the statute and subsequent due process violations are questions of constitutional import and under *Central Power & Light,* obviate Plaintiff's need to exhaust administrative remedies.

21.    A constitutional claim can also establish a right to judicial review without exhausting administrative remedies when the regulatory scheme is silent on the question. *In Spring Branch Management District v. Valco Instruments Company*, property owners filed suit against a municipal management district for a declaration that their property should have been excluded from the district and taxation by the district. *Spring Branch Mgmt. Dist. v. Valco Instruments Co.,* No. 01-11-00164-CV, 2012 WL 2923151 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet.).   The Texas Local Government Code made express provision for property owners to petition a district requesting exclusion but was silent on the availability of judicial review thereafter. The statute also included administrative procedures for the district's determination of a specific tax assessment for property in the district, and on that issue authorized judicial review.

22.    The court of appeals held that, because they raised constitutional claims, the property owners could maintain their suit for exclusion from the district notwithstanding the statute's silence on such appeals. The court cited Texas Supreme Court precedent recognizing a party's inherent right to appeal administrative action that allegedly violates the constitution. *Id*. at 5 (citing *City of Amarillo v. Hancock*, 150 Tex. 231, 239 S.W.2d 788, 790 (1951)).   The property owners' suit alleged that the district's failure to exclude the property resulted in a taking of property, denial of equal protection of the law, and denial of the right to uniform taxation in violation of the Texas Constitution. *Valco Instruments Co*., 2012 WL 2923151, at *6.   In *Spring Branch*, there was no dispute that the property owners had pursued the administrative remedies

that were available to them. Had they not done so, it is doubtful in light of *City of Dallas v. Stewart,* that the court would have recognized the right to judicial review of the constitutional claims. *Compare City of Grapevine v. CBS Outdoor,* Inc., No. 02-12-00040-CV, 2013 WL 1830375 (Tex. App.—Fort Worth, May 2, 2013, no pet. h.) (affirming dismissal of some claims for failure to exhaust administrative remedies; affirming dismissal of constitutional due process claim for failure to base it on a vested property right; but reversing dismissal to allow inverse condemnation claim that was not dependent on failure to exhaust administrative remedies). *City of Dallas v. Stewart,* 361 S.W.3d 562, 579 (Tex. 2012).

23.     The Dallas Ordinance permits appeal of questions related to substantial evidence to the district court but grants no other grounds of appeal. Thus, Plaintiff's situation falls in *Valco's* ambit because the Ordinance does not outline a procedural scheme by which appeals of substantive or constitutional questions may be appealed or addressed.

**B.     Plaintiff has exhausted all administrative remedies.**

24.     There is no ongoing administrative proceeding. The Ordinance itself shows that the PLAB affirmation of the Chief's determination is the last administrative remedy. *See* 2-96(c) ("The decision of the permit and license appeal board is final as to administrative remedies, and no rehearing may be granted.").

25.     The PLAB affirmed the Chief's decisions regarding the two subject properties[1] on August 5 and September 2, respectively.[2] Defendants, in the same paragraph, assert both that the "Chief has now made a final habitual criminal property designation for both properties" and also, somehow, that "Plaintiff's taking claims are not ripe to the extent that there is no final decision

---

[1] Plaintiffs' properties referenced throughout are the Red Bird Lane and Elsee Faye Higgens properties,  referenced as "RBL" and "EFH".
[2] Additionally, Plaintiff filed its Original Petition for Judicial Review in the 298th District Court, Dallas County, Cause No. DC-21-11551 on August 25, 2021.

as to the habitual criminal property designations." ECF No. 25 at 8.

26.     Defendants allege that "[f]or a particular property to be considered a habitual criminal property, five or more abatable criminal activities that result in a law enforcement report or action must have occurred within the prior year." ECF No. 25 at 9.[3] *Younger* abstention doctrine allows federal courts to decline to exercise jurisdiction involving claims for injunctive and declaratory relief that they regard as improper intrusions on state enforcement of its own laws in its own court. *Younger v. Harris*, 401 U.S. 37 (1971). Plaintiff has no adequate remedy at law. Under the *Burford* abstention doctrine, a federal court may abstain from exercising its equity jurisdiction in order to avoid needless conflict with the administration by a state of its own laws and affairs. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943). Defendants believe that the regulation of nuisance properties is at the heart of the municipal police power. ECF No. 25 at 9.

27.     Plaintiff, however, does not own a nuisance property, nor have Defendants brought a nuisance action, which the Ordinance neither forbids nor requires as a prerequisite. Had Defendants brought a civil nuisance action, which the purpose of the Ordinance authorizes at 27-45(b), *Younger* might have merited further consideration, but because they did not, *Younger* does not apply. Defendants allege that "[t]he City has a coherent policy to address crime and abate nuisances" and perhaps they do, but the Ordinance was created, explicitly, as a separate means from Tex. Civ. Prac. & Rem. Code § 125.0015(a). the Purpose of the Ordinance itself provides that "[the Ordinance] does not in any way impair the city's ability to file a lawsuit under Chapter 125 of the Texas Civil Practice and Remedies Code" § 27-45(b). ECF No. 25 at 16.

28.     "In the context of a property owner's appeal of an administrative nuisance determination, independent court review is a constitutional necessity" and "nuisance determinations must

---

[3] At the RBL appeal, the PLAB found that "within 365 days" does not mean "the last 365" days, contrary to the clear statutory language.

ultimately be made by a court, not an administrative body, when the property owner contests the administrative finding." *Stewart* at 564 and 569. "The protection of property rights, central to the functioning of our society, should not—indeed, cannot—be charged to the same people who seek to take those rights away . . . unelected municipal agencies cannot be effective bulwarks against constitutional violations" *Id*. at 580. Plaintiff properly alleges that the Ordinance is void for vagueness (ECF No. 16 at 17-24), takings (ECF No. 16 at 24-26), and violations of due process (ECF No. 16 at 27-29).

29.     The Ordinance is unduly vague because it places the sole authority for determining whether a property is a habitual criminal property in the Chief and, thus, it authorizes and even encourages arbitrary and discriminatory enforcement. The Ordinance does not provide notice to a person of ordinary intelligence who seeks to regulate conduct to avoid particular penalties within the statutory range. Even if a person behaves to avoid an enhanced penalty under the Ordinance, the Chief retains sole discretion. *Beckles v. United States*, 197 L. Ed. 2d 145 (2017).

30.     Plaintiff has properly plead policies, policy makers, and federally protected rights. Indeed, Plaintiff has alleged and pointed towards policy makers, policies, customs, and a violation of its constitutional rights whose 'moving force' was the policy or custom. Defendants nevertheless believe that "plaintiff is further required to establish that the moving force behind the alleged constitutional deprivations was the city's deliberate conduct. *See Carmona v. City of Dallas*, No. 3:19-CV-469-L, 2020 WL 2812859, at *5" ECF No. 25 at 19.

31.     The PLAB provided findings of fact, without conclusions of law for both properties.[4] Defendants cite *Texas Health Facilities Com. v. Charter Medical-Dallas*, but do not include the Supreme Court's rule there that "[t]he characteristics of proper findings of fact, as well as their purposes, are well established. Valid findings of fact must be clear and specific. *Gage*, 582

---

[4] *See* Exh. 2, RBL Findings of Fact Original; Exh. 3, RBL Findings of Fact Amended; Exh. 5, EFH Findings of Fact.

S.W.2d at 414. A mere conclusion or a recital of evidence is inadequate (citations omitted)" *Texas Health Facilities Com. v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 451 (Tex. 1984).

32.     At the RBL appeal, former PLAB board member Patterson asked the testifying police officer: "how can we be sure these steps [Hoppenstein] is taking--how do we know these criminals are going to stop doing what they are doing if you guys can't even do it?"[5] Shortly after the hearing, Board member Patterson resigned from her position on the PLAB. Exh. 7, PLAB Vacancies August 2021; Exh. 8, PLAB Vacancies September 2021. Board member Patterson's absence draws one's attention to the fact that on the RBL Findings of Fact, her signature is the only one both there and in the EFH Findings of Fact, that was not verified. *See* Exh. 2, Exh. 3, and Exh. 5. At the RBL hearing, board member Nutall asked "who determines what is "reasonable"?"[6] Perhaps even more concerning is the fact only four of the eight possible "aye" boxes were checked. Exh. 3.

33.     Chairman Setnick said: "It's been brought up--how much does a property owner have to do to be considered having taken reasonable steps. And I don't think we, we--There's not a metric for that, right, in the Ordinance."[7] Chairman Setnick then asked: "If the owner did other things and crime went down, would you still go after the property owner as a nuisance?"[8] He then said "Is this just a Sisyphean thing?"[9]  Finally, Chairman Setnick himself confused the burden he purported to understand when he said "I agree with Appellant, that he is not limited to the steps listed in § 27-49. But I don't think he's taken sufficient steps."[10]

34.     The burden of Plaintiff is one of reasonableness. Yet the standard Defendants have held

---

[5] 03:49:30 https://dallastx.swagit.com/play/08052021-641
[6] *Id*. at 04:03:30
[7] *Id*. at 04:28:25
[8] *Id*. at 04:29:00
[9] *Id*. at 04:33:00
[10] *Id*. at approx.. 05:00:00

Plaintiff to is, as stated, one of sufficiency. The Ordinance does not require an owner to take steps sufficient to abate criminal activity. The Ordinance requires an owner to take *reasonable* steps to abate abatable criminal activity. *See* § 27-48(b).

35.     Defendants believe that "[a]t the accord meeting, the appeal to the PLAB, and any appeal to state district court, Plaintiff has the opportunity to raise federal challenges." ECF No. 25 at 14. First, Plaintiff was denied the opportunity to raise federal challenges at the accord meeting because raising federal questions is not included among the evidence presentable that Plaintiff's property is not a habitual criminal property. Second, Plaintiff was not allowed to raise federal challenges to the PLAB because "[i]n deciding an appeal, the permit and license appeal board is limited to the issues of whether the presumptions in § 27-48 of this chapter, as amended, are satisfied." § 27-51(c). Third, appellants are not allowed to raise federal challenges when appealing to state district court because they are limited only on the substantial evidence rule. Dallas Code § 1-11.

36.     Defendants assert that "the purpose of the accord meeting was to allow Plaintiff the opportunity to present evidence of reasonable steps taken to abate criminal activity." ECF No. 25 at 29. Defendants cite case law to assert that, "procedural due process also requires the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)" ECF No. 25 at 29. "The hearing does provide an opportunity for Plaintiff to challenge the assessment of the fee, however, by allowing Plaintiff to rebut the presumption that its properties are habitual criminal properties." ECF No. 25 at 30.

37.     Defendants then assert that, "[d]ue process does not require an individual determination of the applicable fee, and it is sufficient for Plaintiff to have an opportunity to be heard as to whether a fee should be imposed at all. *Id*. Defendants believe "the Ordinance is not vague, and

the applicable standards are stated and not vague. Furthermore, the Ordinance provides Plaintiff with an appeal to a City board, the PLAB, and matters heard by the PLAB can be appealed to state district court." ECF No. 25 at 30. In reality there is only ever one matter, at most, "heard by the PLAB" and that is the one expressed in § 27-51(d).

38.     "Under Texas law, a common nuisance is statutorily defined as a property where persons habitually go to commit certain criminal offenses and the owner knowingly tolerates the activity and fails to make any reasonable attempt to abate the activity. Tex. Civ. Prac. & Rem. Code § 125.0015(a). Suits to abate a common nuisance may be brought by individuals, the attorney general, or a district, county, or city attorney. Tex. Civ. Prac. & Rem. Code § 125.002. Thus, under Texas law, there is no protected property or liberty interest to maintain a common nuisance or allow abatable criminal activity to occur at a property. A property owner has no right to engage in a nuisance. *Cedar Point Nursery*, 141 S. Ct. at 2079." ECF No. 25 at 28.

39.     Plaintiff, however, does not assert a right to engage in any nuisance because Plaintiff is not engaging in any nuisance.

40.     While "[a] governmental entity has the authority to place limitations on property rights through nuisance claims, *Severance v. Patterson*, 370 S.W.3d 705, 710 (Tex. 2012)" nevertheless, "[s]uch action constitutes an exercise of police power" and "[w]hether an action is a valid effort to abate a public nuisance and whether the action constitutes a taking are two sides of the same coin" and a "[governmental entity] may not, under the guise of the police power, arbitrarily interfere with private property or impose unusual or unnecessary regulations on it." *Id*. Likewise, where the Texas Civil Practices and Remedies Code uses the phrase "make reasonable attempts", the Ordinance uses "take reasonable steps." Tex. Civ. Prac. & Rem. § 125.0015(a) and Ordinance § 27-48(b).

41.     "The plain language of the statute places the focus of the inquiry on what efforts the defending parties took, as opposed to the ultimate success or failure of those attempts." *Kim v. State*, 451 S.W.3d 557, 563 (Tex. App. 2014). Just because there were further steps Plaintiff perhaps could have made that would also be reasonable, Defendants could not satisfy their own burden of proving that Plaintiff failed to take reasonable steps. *Id*.

## III.    OBJECTIONS

42.     The affidavit of Dallas Assistant City Attorney Alexis Hernandez Affidavit, ECF No. 26 at 58-60 reads: "I have personal knowledge of the matters stated herein and, to the best of my knowledge and recollection, they are true and correct." *Id*.  An affidavit (or declaration) based on the affiant's "best knowledge" does not comply with the rule. The affidavit must positively and unqualifiedly represent the facts stated to be true and within the affiant's personal knowledge. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470–471 (Tex. 1994); *see*, *e.g*., *Geiselman* v. *Cramer Financial Group*, *Inc*., 965 S.W.2d 532, 537 (Tex. App. 1997) (representation that statements were made "to the best of my knowledge" was no evidence at all of facts and did not comply with requirement that affidavit must be made on personal knowledge).

43.     The affidavit in question is the only one filed which purports to verify Exhibits 4, 6, and 7. Exhibit 6 is the Final Determination Letter for RBL which threatens as follows: "Payment is due immediately upon receipt of this notice" and yet the Ordinance does not require this. "You are also required to place a placard or placards on the Property within 10 business days of receiving this letter. You must pay your invoice and bring a copy of your payment invoice before obtaining the placard." And yet the Ordinance does not require this either.

44.     "The Detective will identify all locations on the Property where the placard or placards must be placed" when in reality the Ordinance reads that "[t]he chief may require the owner to

place a placard on or near the front door or at any main entrance to the structure or dwelling unit.  For multitenant and commercial properties, the chief may also require the owner to place a placard in a conspicuous place in a common area of the property." § 27-52(1) "Removing or destroying the placard is a Class C misdemeanor offense and may result in criminal penalties of a fine up to $2000" when in reality the Ordinance reads that "a person violating a provision of this Ordinance is, upon conviction, punishable by a fine not to exceed $500" (City App'x 007) and "[a] person commits an offense if the person, without authority from the chief, removes or destroys the placard." § 27-52(1)(B).

45.     Furthermore, Defendants continue to ignore the Chief's failure to render a decision within the statutorily prescribed period of time as pertains to both RBL and EFH. Under § 27-49(d) which reads that, "[n]ot later than 30 days after the date of the accord meeting, the Chief shall provide the owner with notice of the Chief's final determination as to the presumptions under § 27-48 of this chapter, as amended." *Id*. The Accord Meeting for EFH was held on May 26, 2021. Thirty days from May 25th elapsed on June 24th. Thirty days from May 26th elapsed on June 25th, and the statutorily required sixty days elapsed on July 26th.

46.     The PLAB met six times in the past year. Board member Galvan was absent on February 4, 2021, August 5, 2021, and September 2, 2021. Board member Galvan's position ought to have been forfeited prior to the September 2 hearing under § 8-20(c) "A member of a board that meets monthly, who is absent from more than 25 percent of the regular meetings during any 12-month period, whether excused or not, shall result in a forfeiture." *See* Ex. 4, 6, and Ex. 9, PLAB Minutes February 2021.

47.     Plaintiff requests the Court take judicial notice of the fact that PLAB board member Kight has been serving since January 22, 2012. Ex. 8, PLAB Board Members.[11] Board member Kight's four terms were completed in 2020. At the September 2 hearing, Board member Kight asked whether there are any records of what is being said during the meetings with property owners after they've received the preliminary designation. "Is there no official report in Dallas of what was said and what went on in those meetings and what requests were made of the appellant for changes?" Kight said.[12] "It's hard to prove what you said to the appellant if there's no written record," Kight said. Kight concluded his questions by saying said if the Defendants have records of those meetings they don't want to show it "implies maybe you don't want [us] to see what you said."[13]

48.     Concerning the "abatable criminal activity" referenced in City's App'x from 76-103 ECF No. 26, the following, which was addressed at the RBL PLAB hearing, is here repeated because the same faulty reports have been produced as purported evidence. To bring but a few to the Court's attention:

    i.      Criminal Trespass 52770-2020. Warning only.
    ii.     Robbery 103443-2020. Report made at station. A mere report is not an investigation.
    iii.    Deadly Conduct/Discharge of Firearm,188626-2020. The term does not include crimes of family violence.
    iv.    Possession of Controlled Substance, 134897-2020. Reported by tenant.[14] Possession of Controlled Substance, 034097-2021. Reported by tenant; Criminal Trespass 034601-2021. Reported by tenant; Criminal Trespass 015815-2020. Reported by tenant.

---

[11] Under § 2-95(c) "Each member shall be appointed for a two- year term beginning on October 1 of each odd-numbered year.  All members shall serve until their successors are appointed and qualified." There are currently seven vacancies.

[12] https://dallastx.swagit.com/play/09022021-581

[13] https://www.dallasobserver.com/news/south-dallas-property-owner-norman-hoppenstein-sues-city-over-habitual-criminal-property-designation-12336154

[14] Owner took a reasonable step to abate abatable criminal activity by including the tenant's duty to report trespassers and tenant was attempting to follow his lease's requirements by "communicating abatable criminal activity to the Dallas Police Department, the chief's designee.

## IV.    PRAYER

Plaintiff Hoppenstein Properties, Inc. prays that this Honorable Court deny *Defendants'*

*Motion to Dismiss*, and for all other relief, both general and special, at law and in equity, to

which it justly may be entitled.

Respectfully submitted,

/s/ Warren V. Norred
Warren V. Norred
Texas Bar No. 24045094;
wnorred@norredlaw.com
515 E. Border Street; Arlington, Texas 76010
Tel. (817) 704-3984; Fax. (817) 524-6686
*Attorney for Plaintiff*

CERTIFICATE OF SERVICE - I certify that the above was served on all parties seeking service
in the instant case via the Court's e-file system on September 16, 2021.

/s/Warren V. Norred
Warren V. Norred