IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HOPPENSTEIN PROPERTIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF DALLAS, and EDDIE GARCIA, in his official capacity as Chief of Police,<br><br>Defendants. | Civil Action No. 3:21-CV-01172-K |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Jurisdiction (the "Motion" or the "Motion to Dismiss"), Doc. No. 46, Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Response"), Doc. No. 56, and Defendants' Reply in Support of their Motions to Dismiss Plaintiff's Second Amended Complaint (the "Reply"), Doc. No. 58. Having has carefully considered the Motion, the Response, the Reply, the associated briefs and appendices, and the applicable law, and finding that abstention under *Younger* is appropriate, the Court **GRANTS** Defendants' Motion to Dismiss. *See Younger v. Harris*, 401 U.S. 37 (1971).

Hoppenstein Properties, Inc. ("Plaintiff") brings this action against the City of Dallas and Eddie Garcia in his official capacity as the City's Chief of Police (collectively, "Defendants" or the "City") under 42 U.S.C. § 1983 for a number of alleged

1

constitutional violations. Doc. No. 40 at 4-5, 20-30. Plaintiff also advances similar allegations for violations of the Texas State Constitution. *Id.* at 20-26. Plaintiff maintains that this Court has supplemental jurisdiction to hear these state law claims "because the claims are related to its constitutional claims which are within this Court's original jurisdiction and form part of the same case under Article III of the United States Constitution." *Id.* at 5.

The genesis of this lawsuit is the City's Habitual Criminal and Nuisance Properties Ordinance (the "Ordinance"). Dallas, Tex., Code ch. 27, art. VIII, §§ 27-45—27-54. Under the Ordinance, a property may be presumed to be a "habitual criminal property" after the Chief of Police determines that: "(1) five or more abatable criminal activities within 365 days resulting in either a report of a law enforcement agency documenting an investigation of an abatable criminal activity on the property or enforcement action against any person associated with the abatable criminal activity on the property; and (2) at which persons have historically committed abatable criminal activities, according to recent crime data." *Id.* §§ 27-48, 27-49. Among other consequences, owners of properties finally determined to satisfy these presumptions must pay yearly fees, and they may be required to place a placard near the main entrance of the property identifying it as a habitual criminal property. *Id.* §§ 27-52, 27-53.

In April 2021, the City initiated administrative proceedings against Plaintiff by serving it notice that two of its properties had been identified as presumed habitual

criminal properties (collectively, the "HCP Proceedings"). Doc. No. 40 at 12-15; *see* Tex. Loc. Gov't Code §§ 54.032, 54.033, 54.043; Dallas, Tex., Code ch. 27, art. IV-b. Consistent with the Ordinance, Plaintiff was ordered to attend accord meetings at which it could present evidence to the Chief of Police that it took reasonable steps to abate the identified criminal activity. *Id.* at 12-19; Dallas, Tex., Code ch. 27, art. VIII, § 27-49. After Plaintiff received both notices and after Plaintiff worked with the City to reschedule the dates for the accord meetings, Plaintiff filed this lawsuit on May 22, 2021. Doc. No. 40 at 13, Doc. No. 41 at 53, 56; *see* Doc. No. 1. The accord meetings were held days later on May 25, 2021 and on May 26, 2021. Doc. No. 41 at 82, 84. Ultimately, the Chief of Police determined the properties to be habitual criminal properties. *Id.* Plaintiff appealed the Chief's designations to the City's Permit and License Appeal Board ("PLAB"). *Id.* at 86; *see* Dallas, Tex., Code ch. 2, art. IX; Dallas, Tex., Code ch. 27, art. VIII, § 27-51. Plaintiff's appeals to the PLAB were unsuccessful. *See* Doc. No. 40 at 18-19. Dallas, Tex., Code ch. 2, art. IX, § 2-99 allows for appeals of final PLAB decisions to state district court. *See* Tex. Loc. Gov't Code §§ 54.039, 214.0012. Plaintiff appealed one PLAB decision to state district court on August 5, 2021, and the other on September 22, 2021 (collectively, the "PLAB Appeals"). Doc. No. 40 at 18. As far as this Court has been made aware, these appeals are ongoing.

On November 22, 2021, the City filed a separate nuisance suit against Plaintiff and one of its properties *in rem* in state court (the "State Nuisance Suit"). Doc. No. 35-2 at 74-80; *see* Tex. Civ. Prac. & Rem. Code, tit. 6, ch. 125 (the "State Nuisance

Statute"). Plaintiff believes that the City's State Nuisance Suit is retaliatory and violative of its First Amendment right to petition the government for redress. Doc. No. 40 at 30-31. Plaintiff amended its Complaint to add this First Amendment claim on December 16, 2021. *Id.*

Among other arguments in its Motion to Dismiss, the City contends that this Court must abstain under *Younger*. Doc. No. 47 at 10-13. *Younger* abstention is not a jurisdictional limitation, but a doctrine of equitable constraint based in comity and federalism. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 601 (1975); *see Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). The notion of comity necessitates "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. This respect for state functions and processes "precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

*Younger* applies only to three exceptional categories of state proceedings: "ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and 'pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts" ability to perform their judicial functions.'" *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571

U.S. 69, 73 (2013); and *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). Citing *Huffman*, 420 U.S. 592, the City argues that the HCP Proceedings and the State Nuisance Suit fall into bucket two—civil enforcement proceedings that are quasi-criminal in nature. Doc. No. 47 at 11. The Supreme Court explained in *Sprint Commc'ns*: "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiated the action. . . . Investigations are commonly involved, often culminating in the filing of a formal complaint or changes." 571 U.S. at 79-80 (internal citations omitted).

The City's separate State Nuisance Suit is a civil enforcement proceeding that is quasi-criminal in nature. *See Huffman*, 420 U.S. at 604 (extending *Younger* to proceedings "in aid of and closely related to criminal statutes" and applying *Younger* abstention to a state's civil nuisance proceeding). Similarly, the Ordinance is in aid of and is closely related to the state's criminal statutes as it attempts to target and mitigate the same criminal offenses as the State Nuisance Statute. *Id.*; *Compare* Dallas, Tex., Code ch. 27, art. VIII, §§ 27-45, 27-46(1), *with* Tex. Civ. Prac. & Rem. Code, tit. 6, ch. 125 § 125.0015. Both the Ordinance and the State Nuisance Statute mandate procedures for process and factfinding, and both prescribe penalties for violations and non-compliance. *See Huffman*, 420 U.S. at 604; *Compare* Dallas, Tex., Code ch. 27, art. VIII, §§ 27-49, 27-51—27-53, *with* Tex. Civ. Prac. & Rem. Code, tit. 6, ch. 125 §§

5

125.002, 125.0025, 125.003, 125.004. For these reasons, the Court concludes that both the State Court Nuisance Suit and the HCP Proceedings can properly be classified within *Younger*'s second category.

Next, before invoking *Younger*, the Court must consider the three *Middlesex* factors, which require that there be: "(1) 'an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provide[s] an adequate opportunity to raise federal challenges.'" *Sprint Commc'ns,* 571 U.S. at 81 (quoting *Middlesex*, 457 U.S. at 432). The Court has already addressed the first factor: both the PLAB Appeals and the State Nuisance Suit are ongoing. *See* Doc. No. 41 at 74-80; Doc. No. 48 at 10-83; *see also Huffman*, 420 U.S. at 608 ("[W]e believe that a necessary concomitant of *Younger* is that a party . . . must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger*.").

As to the second *Middlesex* factor, Defendants state: "The three ongoing state cases also unquestionably implicate important state interests. 'Regulation of nuisance properties is at the heart of the municipal police power.'" Doc. No. 47 at 12 (citing *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001)). In a separate portion of their Motion, Defendants also state that "crime, public safety, and abatement of nuisance are important to the interests of the City and the State." *Id.* at 14. Plaintiff does not dispute this point. As noted above, the Ordinance and the State Nuisance Statute are both "in aid of" and "closely related" to certain of the state's criminal

statutes. *Huffman*, 420 U.S. at 604. Because a state has in important interest in "protect[ing] the very interests which underlie its criminal laws and obtain[ing] compliance with precisely the standards which are embodied in its criminal laws[,]" the Court concludes that all three ongoing state proceedings implicate important state interests. *Id.* at 605.

Last, the Court must consider whether Plaintiff was afforded an adequate opportunity to raise its federal claims in the state proceedings. Per Tex. Loc. Gov't Code §§ 54.032, 54.033, the Ordinance implements an alternative administrative procedure for preliminary adjudication and, later, appeals to the City's PLAB. The parties seemingly agree that the PLAB is a "commission panel" created under Tex. Loc. Gov't Code §§ 54.032-54.041. *E.g.,* Doc. No. 40 at 18-19; Doc. No. 46 at 6; Doc. No. 56 at 11. Tex. Loc. Gov't Code §§ 54.039, 214.0012 both allow "Any owner, lienholder, or mortgagee of record jointly or severally aggrieved by any decision of a commission panel" to appeal a decision of a panel to state district court. Similarly, Dallas, Tex., Code ch. 27, art. IX, § 2-99 allows for appeals of PLAB decisions impacting the City, applicant, licensee, permittee, "or by any other person aggrieved by the decision." Review by the state district court is limited by the "substantial evidence rule." *Id.*; Tex. Loc. Gov't Code §§ 54.039(f) 214.0012(f). Under the substantial evidence rule outlined in the Texas Administrative Procedure Act—which governs review of *state* agency determinations—"a court may not substitute its judgment for the

7

judgment of the state agency on the weight of the evidence *on questions committed to agency discretion . . .*" Tex. Gov't Code § 2001.174 (emphasis added).

Plaintiff's only argument on this *Middlesex* factor comes in a separate section of its Response regarding exhaustion of administrative remedies for its takings claim, where Plaintiff reasons that the "Ordinance permits appeal of questions related only to substantial evidence to the district court and grants no other grounds of appeal. . . . [T]he Ordinance does not outline a procedural scheme by which appeals of substantive or constitutional questions may be appealed or addressed." Doc. No. 56 at 11. However, Plaintiff fails to specifically articulate why the state procedures under the substantial evidence rule are inadequate for the purpose of reviewing its federal claims. Plaintiff has not met its burden in overcoming the presumption that the state procedures offer an adequate remedy. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Nor has Plaintiff sufficiently demonstrated "that state procedural law barred presentation of [its] claims." *Moore v. Sims*, 442 U.S. 415, 432 (1979).

While Plaintiff is correct that the Ordinance does not outline a procedural scheme by which it may raise its constitutional claims in its district court appeal, this does not mean that Plaintiff has been barred from doing so. Tex. Loc. Gov't Code §§ 54.039(f), 214.0012(f) state that an appellant "may present a petition to a district court, duly verified, setting forth that the decision is illegal, in whole or in part, and specifying the grounds of the illegality." Plaintiff recognizes this in its PLAB Appeals, both of which raise some of the same constitutional challenges advanced in this case.

Doc. No. 48 at 15-17, 25-31, 47-50, 59-65; *see Dayton Christian Sch.,* 477 U.S. at 629 (observing that appellant could have raised federal claims in state court appeal of administrative order).

Cited by both parties, the Court finds the Texas Supreme Court's opinion in *City of Dallas v. Stewart* instructive. 361 S.W.3d 562 (Tex. 2012). There, the Texas Supreme Court noted that constitutional claims could be asserted for the first time in the district court upon appeal of an agency order, notwithstanding the substantial evidence rule. *Id.* at 579-80. *Stewart* involved a nuisance determination by a city administrative board, and a subsequent takings claim raised on appeal of the board's decision in state district court. *Id.* at 564-81. In a takings case, "a nuisance finding generally precludes compensation for the government's destruction of property," *id.* at 574, and because agency nuisance determinations often involve mixed questions of fact and law (e.g., decisions in which specific facts are applied to statutory terms like "dilapidated" or "substandard"), the *Stewart* court recognized that some agency nuisance determinations effectively require constitutional construction—a role reserved for the judiciary. Agency determinations like the presence of foundation damage, for example, may be afforded deference per the substantial evidence rule. *Id.* at 578*.* But agency determinations requiring legal-factual analysis to decide substantive constitutional claims must be reviewed *de novo*. *Id.* at 578-81.

Here, Plaintiff's constitutional claims relate to the Ordinance itself (e.g., the Ordinance is unduly vague and violates due process), not to the PLAB's findings. *See*

9

Doc. No. 40 at 20-29. Thus, it does not appear that the substantial evidence rule would in any way inhibit the state court's review of Plaintiff's constitutional claims. Moreover, Plaintiff has not indicated to this Court any specific problems related to raising its constitutional claims in either of its PLAB Appeals to the state district court, despite the fact that they were initiated in late 2021.

Plaintiff offers very little in rebuttal to Defendants' abstention arguments. *See RTM Media, L.L.C. v. City Of Houston*, 548 F.3d 220, 228 (5th Cir. 2009). In fact, it appears that Plaintiff's single direct argument against abstention relates only to its First Amendment claim. *See* Doc. No. 56 at 12-14. Citing *Huffman*, 420 U.S. at 611, Plaintiff argues that it "is not precluded by the *Younger* doctrine when it believes that the case filed in state court was 'motivated by a desire to harass or is conducted in bad faith.'" Doc. No. 56 at 13-14. "The bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Texas Supreme Ct.*, 84 F.3d 188, 190 (5th Cir. 1996) (citing *Hefner v. Alexander*, 779 F.2d 277 (5th Cir. 1985)). The bad faith exception also requires at least "some proof." *Id.* at 191. Plaintiff states that it "*believes*" the State Nuisance Suit was filed "in bad faith for the purpose of pressuring Plaintiff." Doc. No. 56 at 13 (emphasis added). In its Complaint, Plaintiff states that it has "pushed back on the City's [inadequate process of handling crime] by appealing the City's determination that Plaintiff is to blame for crime that has resulted from the City's strategy. The City has now ratcheted up the pressure with a public nuisance suit against Hoppenstein Properties based on Section 125 of the Texas Civil Practice and Remedies

10

Code in retaliation." Doc. No. 40 at 30-31. On this point, Plaintiff offers its beliefs and conclusory allegations, but fails to meet its burden of proof.

For the reasons discussed above, the Court abstains under *Younger* and **GRANTS** Defendants' Motion to Dismiss. Doc. No. 46.

**SO ORDERED.**

Signed September 28th, 2022.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE